MR. JUSTICE WEBER,
dissenting:
*363 I agree with the majority opinion when it holds that one accused of a crime involving intoxication has a right to obtain an independent blood test to establish his sobriety regardless of whether he submits to a police designated test. I do not agree with the balance of the opinion.
If the action of the State had established a clear interference with Mr. Swanson’s attempt to obtain exculpatory evidence, then I would agree with the majority. However, I believe a consideration of all of the facts requires a different conclusion.
I will review the pertinent facts, including portions which are mentioned in the majority opinion. On January 9, 1985, at 1:30 a.m., the defendant was stopped by the police and taken to the station. His father came to the station before the blood test was taken and indicated his willingness to pay for the blood test. The defendant was taken to the hospital at his request where the blood sample was drawn. From the hospital the defendant was transferred to the sheriff’s office. The arresting officer gave the blood sample to the defendant with the advice that it was the defendant’s sample, that he should send it in as soon as possible. The label on the sample stated “Keep Refrigerated.” During the booking process at the sheriff’s Office, the sample was placed on the counter in the booking room. We do not know if the sample was actually taken from the defendant, or was placed on the counter by the defendant. The only evidence establishes that when the officer left the booking room, he saw the sample on the counter.
Approximately 5 hours after the booking, defendant was taken before the Justice of the Peace on the morning of January 9. At that time bail was set. There is no indication that defendant made any request at that time with regard to the blood sample. Specifically there is no indication that he requested of the police or the Justice of the Peace that the blood sample be sent in. The defendant was released on his own recognizance on January 11. Again, there is no indication that the defendant made any inquiry with regard to the blood sample.
The arresting officer testified that he found the sample at the police station and put it in the refrigerator. He then called the defendant’s father and told him that somebody needed to get the sample and send it in for analysis. The defendant’s father testified that he received the call on January 12 and that the sample was picked up from the police station on January 13.
I agree with the conclusion of the majority that the police cannot *364 frustrate the effort of an accused to obtain independent evidence of sobriety. I question that the evidence in this case indicates any such conduct. While I agree that it would have been appropriate for the police to have placed the sample in the refrigerator on the morning of January 9, we must balance this against the indifference on the part of the defendant as to the treatment of the sample. He made no request for refrigeration or sending in of the sample at the time of booking, or at the time of appearance before the Justice of the Peace, or at the time that he was discharged on January 11. The defendant’s disinterest suggests that he had concluded that he did not desire a test of his blood sample. The only reason that the matter came to the attention of anyone is that the officer was diligent when he observed the sample on January 12 at the police department. He then attended to the refrigeration and called the defendant’s father.
I agree with the conclusion that the police cannot interfere with the gathering of exculpatory evidence. In this case, the facts indicate a total lack of diligence or effort on the part of the defendant. I would not dismiss the case.
MR. CHIEF JUSTICE TURNAGE and MR. JUSTICE GULBRANDSON join in the foregoing dissent of MR. JUSTICE WEBER.